IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

ALDOFO O'CON,

    Plaintiff,

v.                                                    2:24-CV-32-Z-BV

BRADEN URQUHART and
BRENNON ECKERT,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Rule 56 Motion for Summary Judgment ("Motion") (ECF No. 20). After four months and counting, Plaintiff has failed to respond. Because Defendants have demonstrated that they are entitled to judgment as a matter of law as to all of Plaintiff's claims, the Court **GRANTS** the Motion.

**BACKGROUND**

Defendant Deputy Braden Urquhart pursued a routine call for missing Apple Air Pods at Plaintiff's residence. ECF No. 22-1 at 4–10. The owner of those Air Pods lost them at the gym but tracked them to Plaintiff's residence on the evening of February 15, 2022. *Id.* When the owner arrived, Plaintiff "became upset and made a statement alluding to a threat of shooting [the owner] if he did not leave Plaintiff's residence." ECF No. 21 at 8 (citing ECF No. 22-1 at 4–10). *Id.* The owner then called Urquhart, who then notified Sergeant Joshua Bernal about the dispute. ECF No. 22-1 at 4–10. Urquhart and Bernal knocked on Plaintiff's door multiple times, identifying themselves as "being with the Randall County Sheriff's Office." ECF No. 21 at 8.

Plaintiff did not answer. But "[o]nce dispatch found Plaintiff's phone number, Urquhart called and spoke with Plaintiff, who confirmed his address as the one in question." *Id.* (citing ECF No. 22-1 at 4–10). Plaintiff refused to speak about the Air Pods issue. ECF No. 22-1 at 4–10. After Urquhart reaffirmed that they would handle the issue that night, Plaintiff invited Urquhart and Bernal to meet him in his garage. *Id.*

In the garage, "Plaintiff confessed that he in fact had the Air Pods, at which point Urquhart asked Plaintiff to give them to him so he could return them to the owner." ECF No. 21 at 9. Plaintiff was verbally combative, refused, and demanded that the officers leave his property. ECF No. 22-1 at 4–10. The officers explained that if Plaintiff relinquished the Air Pods, they would leave. *Id.* "Plaintiff stated he would retrieve the Air Pods if Urquhart stepped out of the garage, but Urquhart believed Plaintiff would shut the garage if he exited." ECF No. 21 at 9 (citing ECF No. 22-1 at 4–10). Accordingly, Urquhart again asked Plaintiff for the Air Pods so he and Bernal could leave. ECF No. 22-1 at 4–10. Plaintiff continued moving further within his garage. *Id.*

That movement was significant because dispatch had previously notified Urquhart that Plaintiff had a license to carry a firearm. *Id.* That knowledge, combined with Plaintiff's prior threat to the Air Pods owner, encouraged Bernal to believe that Plaintiff might have tried to retrieve a firearm. *Id.* Urquhart insisted with polite requests that the entire issue would dissipate if Plaintiff merely relinquished the Air Pods. *See* ECF No. 22-1 at 20, 14:08 (Urquhart stating that "[i]f [the Air Pods] are in the car, you grab them, cool, we'll be done, we'll get out of your hair and you can go to sleep"). Instead, Plaintiff "continued to yell and impede Urquhart in his duties, so Urquhart attempted to place Plaintiff under arrest for interference with the officers' public duties." ECF No. 21 at 10 (citing ECF No. 22-1 at 4–10).

Urquhart then took Plaintiff's right wrist and attempted to place it behind his back, and after Plaintiff pulled away, Urquhart placed his right wrist in a lock to gain compliance. ECF No. 22-1 at 4–10. Plaintiff continued to resist, leaning back into the garage wall to avoid handcuffs. *Id.* So Urquhart lifted Plaintiff's right let in the air and drew Plaintiff away from the wall. *Id.* Plaintiff continued to resist, failing to cooperate with the officers' repeated orders to turn on his stomach and place his hand behind his back. *Id.* Instead, he made a grabbing-and-holding motion under his vehicle. *Id.* Urquhart ordered Plaintiff to release whatever he was grabbing and then struck him in the right bicep with a closed fist to facilitate the release. *Id.* Plaintiff still held on. *Id.* So Urquhart performed a knee strike to his right torso, finally forcing Plaintiff to release whatever he was holding. *Id.*

Urquhart and Bernal then moved to turn Plaintiff onto his stomach. As Bernal attempted to grab Plaintiff's arm to this end, he grabbed Bernal's right thumb to twist it. *Id.* Bernal withdrew his arm and struck Plaintiff "in order to prevent any further attempts of harm from Plaintiff to the officers." ECF No. 21 at 11. Urquhart then "performed an arm bar" to successfully force Plaintiff into handcuffs. *Id.* Plaintiff initially refused Urquhart and Bernal's efforts to place him in their patrol vehicle, but eventually gave way. ECF No. 22-1 at 4–10.

Meanwhile, Defendant Eckert was a jailer with the Randall County Sheriff's Office who booked Plaintiff. ECF No. 22-2 at 44–45. He was not at the scene of the arrest and interacted with Plaintiff only briefly at the jail. *Id.* Plaintiff does not allege any maltreatment or issues at the Randall County Jail after his arrest. ECF No. 1.

**LEGAL STANDARD**

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

The movant meets its initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). Facts are considered "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining whether a genuine issue as to any material fact exists, [courts] must view the evidence in the light most favorable to the nonmoving party." *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 348–49 (5th Cir. 2008).

When, as here, a nonmovant failed to respond to a movant's summary judgment motion, courts cannot grant summary judgment as unopposed for failure to respond. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). But "[t]he failure to respond to a summary judgment motion leaves the movant's facts undisputed." *Flowers v. Deutsche Bank Nat. Tr. Co.*, 614 Fed. Appx. 214, 215 (5th Cir. 2015) (citing *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988)). In such cases, courts "need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Flowers*, 614 Fed. Appx. at 215.

### ANALYSIS

Plaintiff asserts one Section 1983 claim for excessive force and a Section 1988 claim for attorneys' fees should he prevail. ECF No. 1 at 7–8.[1] Defendants, as a former deputy and jailer, properly assert qualified immunity as an affirmative defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

Government officials like Defendants are entitled to qualified immunity on summary judgment unless "(1) [Plaintiff] has adduced sufficient evidence to raise a genuine [dispute] of

---

[1] Defendants claim that Plaintiff also asserted an unreasonable arrest and seizure claim, ECF No. 21 at 7, but Plaintiff's complaint alleges only one count for excessive force, ECF No. 1 at 7–8. Thus, the Court will not review Defendants' response to that unpled claim here.

material fact suggesting [the officers'] conduct violated an actual constitutional right, and (2) the officers' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (internal marks omitted). "Although [qualified immunity is] nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

"[T]he Fourth Amendment right to be free from excessive force . . . is clearly established." *Id.* Assessing an excessive force claim requires a "test of reasonableness" under the Fourth Amendment that is "not capable of precise definition or mechanical application." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal marks and citations omitted). Instead, this inquiry "requires careful attention to the facts and circumstances of each particular case." *Id.* Guideposts for excessive force include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

The first *Graham* factor (severity of the crime at issue) cuts in Plaintiff's favor. Urquhart was investigating a missing pair of Air Pods that Defendants do not even allege were stolen. *See* ECF No. 21 at 7–8 (explaining that Urquhart notified Bernal "of possible stolen property"). Urquhart arrested Plaintiff only "for interference with the officers' public duties," not for any other underlying crime. ECF No. 21 at 10; *see* TEX. PENAL CODE § 38.15(a)(1) (interference with public duties). And the severity of that foregoing crime "is minor." *Zinger v. Salvaggio*, 610 F. Supp. 3d 919, 950 (W.D. Tex. 2022).

The second *Graham* factor (whether suspect poses an immediate threat) cuts in Defendants' favor. That is because Urquhart's force was apposite to counteract a credible firearm threat. Before Urquhart arrived, Plaintiff already told the Air Pod owner "to get off my property or [Plaintiff] will shoot me." ECF No. 22-2 at 41. Urquhart confirmed that Plaintiff was licensed to carry a firearm. ECF No. 22-1 at 4–10. And during their struggle to handcuff Plaintiff on the floor, Plaintiff grabbed underneath his vehicle and refused to release an object. *Id.* When pressed to identify what he was grabbing, Plaintiff did not respond. *Id.* Only at that point did Urquhart deliver a knee strike to dislodge Plaintiff from the object he was grabbing. *Id.* That was a reasonable application of force given Plaintiff's prior threat to the Air Pod owner, grabbing an unidentified object underneath his vehicle, and refusing to identify that object to Urquhart.

The third *Graham* factor (whether suspect actively resists arrest) also cuts in Defendants' favor. Plaintiff was combative from the moment he met the officers in his garage. He confessed to custody of the owner's missing Air Pods but refused to relinquish them to police. ECF No. 22-1 at 4–10. He was verbally combative toward the officers and demanded that they leave his property. *Id.*; *see* ECF No. 21 at 10 (noting that Plaintiff "continuously placed his hands in his pockets and became increasingly aggressive to both Urquhart and Bernal while telling them to get off his property"). After Urquhart attempted to place Plaintiff under arrest for impeding his duties, Plaintiff actively resisted. He removed his wrist from Urquhart's grip, pulled his arm back, and resisted going to the ground. ECF No. 22-1 at 4–10. On the ground, Plaintiff resisted Urquhart's instructions to identify the object he was holding underneath his car and to release that object. *Id.* Even after placed in handcuffs, Plaintiff refused to enter the police vehicle. *Id.* At no point did Plaintiff comply when placed under arrest.

Thus, the foregoing does not amount to excessive force. Indeed, the Fifth Circuit has upheld no constitutional violation under facts arguably more favorable to the plaintiff. *Solis v. Serrett*, 31 F. 4th 975, 983 (5th Cir. 2022). In *Solis*, the officers arrested Solis for public intoxication, which was a "minor offense" for purposes of the *Graham* factors. *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017). She posed no immediate threat to anyone's safety, wearing only "an evening dress with laced sandals and armed only with her cell phone." *Solis*, 31 F.4th at 982. In fact, the only *Graham* factor cutting in the officers' favor was the third — active resistance of arrest. *Id.* at 982–83. Solis was "generally hostile to the officers from the beginning of the traffic stop," "argued with officers," and backed away when placed under arrest. *Id.*

Here, the only factor in Plaintiff's favor is the minor severity of the crime at issue. But his prior threats to shoot the Air Pod owner, combined with the ambiguity of what he was grabbing underneath his vehicle, posed significantly more of a threat than a woman in an evening dress and sandals. Further, Plaintiff violently resisted arrest and did not merely retreat from the officers. In summary, the Fifth Circuit is clear that Urquhart's conduct cannot amount to excessive force.

Because Urquhart did not apply excessive force when arresting Plaintiff, Plaintiff cannot overcome Defendants' qualified immunity defense. Plaintiff has not demonstrated that either Defendant "violated an actual constitutional right," which is the first of two elements Plaintiff must establish to prevail against qualified immunity. *Poole*, 691 F.3d at 627. Of course, the right to be free from excessive force is clearly established. *Hollins*, 551 F.3d at 326. But Plaintiff has not proven excessive force under the *Graham* factors. That failure means that Plaintiff cannot prevail on his Section 1983 excessive force claim against Defendants.

7

CONCLUSION

Defendants' Motion is **GRANTED** on qualified immunity grounds. Therefore, the Court grants summary judgment to Defendants on Plaintiff's outstanding Section 1983 (excessive force) and Section 1988 (attorney's fees) claims.

**SO ORDERED.**

November 8, 2024.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE